IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2012 MAR 26  AM 10: 22

CLERK _____
SO. DIST. OF GA.

KATIE ALLISON MCGARITY,      )
                             )
        Plaintiff,           )
                             )
v.                           )   CASE NO. CV410-130
                             )
FM CARRIERS, INC.,           )
                             )
        Defendant.           )
                             )
_____)

O R D E R

Before the Court are Defendant's Motion for Summary Judgment (Doc. 44) and accompanying Daubert evidentiary motions filed by both parties (Docs. 39, 41, 42, 43). Defendant has also filed a Motion to Strike Affidavit of Dr. John Vasiliades. (Doc. 70.) For the reasons that follow, Defendant's Motion for Summary judgment (Doc. 44) is **GRANTED IN PART** and **DENIED IN PART**.[1] Defendant's request

---

[1]   After careful consideration, Defendant's Motion for Hearing (Doc. 45) is **DENIED**. There are a number of other evidentiary motions pending before the Court by both parties including a motion in limine from Defendant (Doc. 75) and three motions in limine by Plaintiff (Docs. 91, 92, 93). Because this order will impact the bases upon which these motions rely, they are **DISMISSED**. The Court will allow the parties an opportunity to refile any of these motions so long as the motion is not contrary to anything provided for in this order. The parties should be aware that they will remain bound by the deadlines set forth in any scheduling order. However, both parties should also be aware that the Court will not accept any motion, response, or reply that incorporates by reference any factual allegation or argument contained in the original motions or

for summary judgment as to Plaintiff's claims of negligence and negligence per se is **DENIED**, with the exception of Plaintiff's negligence per se claims under 49 C.F.R. §§ 393.28, 393.86, 571.223, and 571.108, which is **GRANTED**. Defendant's request for summary judgment as to Plaintiff's claims of strict liability and punitive damages is **GRANTED**.

Defendant's request to exclude the expert testimony of Mr. Sloan (Doc. 43) is **DENIED** as to his first and second opinions. Defendant's request as to Mr. Sloan's third, fourth, and fifth opinions is **GRANTED IN PART** and **DENIED IN PART**. Mr. Sloan may testify concerning the standards of the Federal Motor Carrier Safety Regulations ("FMCSR"), found at 49 C.F.R. §§ 300-399, as they relate to inspection and record-keeping protocol. Mr. Sloan may only testify to what extent, if any, the lack of retroreflective tape had on Jaffe's reaction time and avoidance of the tractor-trailer. Mr. Sloan may also testify whether the rear impact guard was deficient in its performance during the accident. Defendant's Motion to Exclude Mr. Sloan's sixth opinion is **GRANTED**. Plaintiff's request to exclude Mr. Scapellato's testimony (Doc. 39) is **DENIED**. Plaintiff's

---

any documents filed in response or reply to an original motion. Any further motions or responses should be stand-alone filings that independently contain all the factual allegations and arguments that the filing party wishes the Court to consider.

Motion to Exclude Mr. Corey's testimony (Doc. 41) is **DENIED**. Plaintiff's Motion to Exclude Dr. Handler's testimony (Doc. 42) is **DENIED**. Finally, Defendant's Motion to Strike (Doc. 70) is **GRANTED**.

## BACKGROUND

Defendant FM Carriers, Inc. employed Fernando LaPorte ("LaPorte") as a truck operator.[2]   (Doc. 76 ¶¶ 5, 37.)   On April 2, 2009, LaPorte departed Orlando, Florida via Interstate 95 en route to South Carolina to meet another truck operator and switch trailers.   (Id. ¶ 9.)   After arriving in Hardeeville, South Carolina to switch out the trailers, LaPorte was advised by the other operator of problems he experienced with the light attachment assembly which caused the lights to flicker.   (Id. ¶ 11.)   According to LaPorte, "the piece that held the electrical coil into the trailer was broken or missing when he inspected it in Hardeeville."   (Doc. 44-1 at 3.)   After making a repair to fix the lighting issue, LaPorte completed an inspection of the vehicle and determined that all of the lights were operable.   (Id.)

---

[2] It is undisputed between the parties that LaPorte was an employee of Defendant at all times for the matter in dispute.   Taken in the light most favorable to the nonmoving Plaintiff, the Court construes the facts as follows.   See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986).

LaPorte then departed from Hardeeville south on Interstate 95. (Id.) During the early morning of April 3, 2009, while continuing his drive on southbound Interstate 95 in Bryan County, Georgia, LaPorte noticed his trailer lights flicker and concluded there may be a problem with the connection for the trailer's lights. (Doc. 76 ¶ 17.) LaPorte then stopped in the emergency lane to investigate the electrical issue. (Doc. 44-1 at 4.)

At the same time, Plaintiff was traveling southbound on Interstate 95 as a passenger in a 2003 Ford Explorer driven by Scott A. Jaffe. (Doc. 76 ¶ 21.) Plaintiff and Jaffe had been to dinner and a bar where they consumed alcoholic beverages. (Doc. 44-1 at 2.) Plaintiff was asleep in the front passenger seat, which was reclined. (Id.) According to Plaintiff, Jaffe "drove the Ford Explorer off the roadway, into the emergency lane, and collided with the rear end of [Defendant's trailer]." (Doc. 76 ¶ 22.) Jaffe was fatally injured as a result of the collision (id. ¶ 26) and Plaintiff was transported by emergency medical services to Memorial Medical Center (id. ¶ 27). At the time of the collision, LaPorte had been stopped for fewer than five minutes. (Doc. 44, Ex. C at 73-74.) LaPorte has testified, and it is undisputed between the parties, that all of his trailer lights,

4

including emergency flashers, were illuminated during the stop and at the time of the collision. (Doc. 44, Ex. C at 28, 33, 42, 62.)  Further, at the time of the collision, LaPorte had not placed any hazard warning devices behind his trailer. (Id. at 73-74.)

The investigating officer, Captain Michael Maxwell, took blood samples from both drivers involved in the collision. (Doc. 44, Ex. A.)  Maxwell did not observe any skid marks or eraser marks from Plaintiff's vehicle, and concluded that Jaffe had been driving straight in the emergency lane for "some period of time." (Doc. 44, Ex. G at 56-57, 69, 80.)  Because Jaffe was not impaled on the steering wheel and his body was found turned towards the passenger seat, Maxwell concluded that he was facing the passenger at the time of the collision. (Id. at 63.) Maxwell also noted that LaPorte's vehicle was parked squarely within the emergency lane and three feet clear of the right hand fog line. (Id. at 23, 50, 53.)  In Maxwell's opinion, Jaffe's impairment or inattentiveness to the roadway was the cause of the accident. (Id. at 61-62.)

On May 28, 2010, Plaintiff filed this action against Defendant alleging multiple counts: 1) vicarious liability and respondeat superior and agency; 2) negligence and negligence per se in violation of numerous federal

regulations; 3) strict liability for inherently dangerous activity; and 4) punitive damages.[3,4] (Doc. 1.) With respect to the respondeat superior claim, Plaintiff alleges that Defendant is liable for the damages caused by LaPorte. (Doc. 1 ¶ 33.) Regarding the negligence and negligence per se, Plaintiff relies on several Federal Motor Carrier Safety Act provisions that Defendant purportedly violated.[5] (Doc. 1 ¶ 31.) Plaintiff argues that Defendant, too, is liable to Plaintiff under a theory of strict liability because parking a trailer in violation of multiple safety regulations is inherently dangerous. (Id. ¶ 41.) Lastly, Plaintiff contends that Defendant's actions constitute an entire want of care and conscious disregard for the consequences, thus entitling Plaintiff to punitive damage awards. (Id. ¶ 46.)

---

[3] Plaintiff had previously filed a similar action against Defendant in the Superior Court of Bryan County, Georgia, before voluntarily dismissing it on May 28, 2010.

[4] On April 20, 2011, this Court granted Plaintiff's request to submit an amended complaint to include information ascertained during a later deposition, which uncovered inconsistencies and contradictions with earlier deposition testimony. (Doc. 69.)

[5] Plaintiff has moved to dismiss a number of these claims. (Doc. 63 at 15-16.) Plaintiff has also filed an amended complaint that does not include these claims. (Doc. 76.) Accordingly, Plaintiff's claims arising under 49 C.F.R. §§ 392.22(a), 393.11, 393.25(e), 393.95(f), and 571.125 claims are **DISMISSED**.

Both parties have hired experts to testify. Defendant has retained James Scapellato as an expert witness concerning the regulatory duties owed by commercial truck companies and the standard of care owed to third parties. (Doc. 17, Ex. D; Doc. 17, Ex. E.)   Defendant has also retained Gary Corey, Jr. to provide accident reconstruction opinions (Doc. 17, Ex. G) and Dr. Jeffery Handler to offer toxicology analysis for Jaffe from the Georgia Bureau of Investigation report (Doc. 17, Ex. W).   Plaintiff has filed motions to exclude the testimony of each expert.   (Docs. 39, 41, 42.)   Plaintiff asserts that Mr. Scapellato's testimony concerning his first and second opinions should be excluded because they are based on unreliable evidence and do not apply industry-specific customs or practices. (Doc. 39 at 1.)   As to Mr. Corey's testimony, Plaintiff argues for the exclusion of Mr. Corey's first opinion because it is unreliable and also because Mr. Corey failed to demonstrate a reliable application of accident reconstruction principles.   (Doc. 41 at 1-2.)   With respect to Dr. Handler, Plaintiff alleges that his testimony should be excluded because it is unreliable, unsophisticated, highly speculative, and the probative value is substantially outweighed by the likelihood to mislead the jury.   (Doc. 42 at 4.)

Defendant objects to the exclusion of all three experts. Regarding Mr. Scapellato, Defendant contends that his statements are much more than personal interpretations and "should be considered very reliable based on his professional experience interpreting [federal] regulations." (Doc. 49 at 2.) Addressing Mr. Corey, Defendant suggests that the conclusions regarding the operation of the vehicle in which Plaintiff was a passenger should be considered very reliable based on his professional experience as an accident reconstructionist and a law enforcement officer. (Doc. 51 at 2.) As to Dr. Handler, Defendant notes that the methodology used for formulating his opinions has been proven reliable. (Doc. 50 at 1-2.)

Plaintiff has engaged James Sloan as an expert to testify regarding accident reconstruction. (Doc. 13.) Defendant maintains that Mr. Sloan's testimony should be excluded because he lacks the requisite qualifications, employed an unreliable and unfounded methodology, and his opinions lack the proper foundation for admissibility required by Federal Rule of Evidence 702 and Daubert. (Doc. 43 at 1.) Plaintiff counters that Mr. Sloan is qualified and the evidence is reliable and based on

accepted scientific and mathematic principles. (Doc. 57 at 3.)

In conjunction with Defendant's Motions to Exclude, Defendant also filed a Motion for Summary Judgment. (Doc. 44.) In the motion, Defendant argues that it is entitled to summary judgment because there is insufficient evidence to give rise to a jury question that either Defendant's or Defendant's driver's conduct rose to the level of negligence per se or negligence, inherently dangerous activity, or want of care. (Doc. 44 at 10.) Further, in the alternative, Defendant maintains that the "material undisputed evidence plainly and palpably shows that the proximate cause of the collision was not any conduct by Defendant [or LaPorte]." (Id. at 10-11.) Plaintiff opposes summary judgment arguing that LaPorte's stop in the emergency lane was unlawful and Jaffe's conduct was an intervening—not superseding—cause. (Doc. 63 at 1, 10.)

In her April 8, 2011 response, Plaintiff attached the affidavit of Dr. John Vasiliades, a toxicologist who seeks to discredit Jaffe's toxicology report. (Doc. 63, Ex. H.) Defendant has since filed a "Motion to Strike Affidavit of Dr. John Vasiliades," alleging that it was an untimely expert witness disclosure. (Id.) Defendant alleges that prior to Plaintiff's filing of the response, Dr. Vasiliades

has "never been identified as a possible expert for Plaintiff, nor has any other toxicology expert been identified or disclosed by Plaintiff."[6]   (Doc. 70 at 4.) Plaintiff responds by arguing that the Defendant's motion to strike Dr. Vasiliades is improper, that Dr. Vasiliades's affidavit is being used as "impeachment" evidence rather than rebuttal expert testimony, and that its introduction does not cause unfair surprise or harm given its late disclosure.   (Doc. 77 at 1-2.)

## ANALYSIS

I. MOTIONS TO EXCLUDE

The admission of expert testimony is controlled by Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles

---

[6] This Court's scheduling order provided that Plaintiff's experts be identified no later than September 12, 2010 and Defendant's experts no later than October 12, 2010.   (Doc. 8.)   The parties were granted multiple discovery extensions (Docs. 20, 24), whereby the discovery period was extended to February 15, 2011 and the civil motions deadline was moved to March 15, 2011 (Doc. 25).   However, in these orders, all other portions of the scheduling order were not affected or modified.   (Doc. 21; Doc. 25.)   Thus, the expert deadlines of September 12, 2010 and October 12, 2010 remained unchanged.

and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"As the Supreme Court made abundantly clear in Daubert, Rule 702 compels district courts to perform the critical gatekeeping function concerning the admissibility of expert scientific evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (internal quotation omitted). The Eleventh Circuit Court of Appeals has explained that district courts fulfill that function by engaging in a three part inquiry, considering whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as to be determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific . . . expertise, to understand the evidence or to determine a fact in issue.

Id. While there will often be some overlap between these concepts of qualification, reliability, and helpfulness, they are distinct concepts that courts should be careful not to conflate. Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK, Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003). The burden of establishing that these requirements are met rests with the proponent of the expert testimony, and not the Daubert

challenger.   McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002).

When a court considers the reliability of a particular expert's opinion, it considers, to the extent possible, (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.   Quiet Tech., 326 F.3d at 1341 (citing McCorvey, 298 F.3d at 1256).   These factors "do not constitute a 'definitive checklist or test.'"   Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593 (1993)). Rather, the applicability of these factors "depends upon the particular circumstances of the particular case at issue."   Id.

A. James Sloan

Plaintiff's expert James Sloan has offered six opinions involving the collision and actions taken by both LaPorte and Jaffe.   (Doc. 13 at 7-8.)   Defendant has filed a Dabuert motion to exclude all opinions of Mr. Sloan because he is either not qualified to render some opinions or the opinions offered are unreliable under the Daubert

test.  (Doc. 43 at 8.)  Mr. Sloan's six expert opinions can be summarized as follows: 1) LaPorte's stop in the emergency lane was unwarranted and unsafe; 2) LaPorte violated federal regulations by not placing warning devices behind his vehicle; 3) LaPorte operated the trailer with the knowledge that it was defective and failed to properly repair it before driving; 4) LaPorte operated a trailer that failed to meet federal regulations regarding the amount, type and placement of retro-reflective sheeting on the rear of the trailer; 5) the rear impact guard failed because it was improperly affixed and rusted; and 6) the Ford Explorer driven by Jaffe was in the southbound emergency lane and would have continued had LaPorte not been parked in the lane.  (Doc. 13 at 7-8.)

As to Mr. Sloan's opinions, the Court finds as follows:  Mr. Sloan may testify regarding his first opinion—LaPorte's stop in the emergency lane—and his second opinion—LaPorte's conduct as it relates to the FMCSR and deploying warning devices.  While both of these opinions are contradicted by Defendant's expert, such contradiction do not make the opinions indadmissible.  See Daubert, 509 U.S. at 596; Quiet Tech., 326 F.3d at 1345-46.  Both parties have provided experts opining on these two issues, see infra Analysis Part I.B, and have sought to exclude the

others expert testimony as unreliable, which rely on much of the same evidence. Following such logic, therefore, the Court would either be compelled to exclude the testimony of both Mr. Sloan and Mr. Scapellato or permit both to offer testimony. In its opposition to Mr. Sloan, Defendant claims Mr. Sloan's opinion lacks credibility and reliability based on calculations made by Defendant using Mr. Sloan's deposition testimony. (Doc. 43 at 14-15.) Defendant alleges that Mr. Sloan has contradicted part of his testimony, thereby making it excludable. (Id. at 11.) However, such inconsistencies are best resolved by the trier of fact through cross-examination. The Court is convinced that Mr. Sloan's testimony with respect to these opinions will complies with the Daubert standards because it will assist the trier of fact in resolving material issues.

Mr. Sloan may also testify to parts of his third opinion—whether LaPorte should have operated the trailer given the possible malfunctions that had occurred. Mr. Sloan may testify concerning the standards of the FMCSR as they relate to the requirements concerning inspection of a vehicle prior to and after trips, documents and record-keeping and protocol regarding safety related issues. While Defendant contends that Mr. Sloan failed to identify

14

any principles or methods of accident reconstruction, the Court will allow Plaintiff's expert the same opportunity to offer testimony interpreting the statutory and regulatory standards.

As to his fourth opinion, Mr. Sloan may offer testimony concerning whether Defendant's trailer required reflective tape on the top-left corner and on the rear impact guard. Mr. Sloan may only testify as to the scope of his qualifications as an accident reconstructionist. That is, to offer testimony on whether, and if so to what extent, the lack of retroreflective tape had in the collision. The Court deems that is well within Mr. Sloan's qualifications and based on a sufficiently reliable methodology to assist in determining a possible material issue of fact.

Mr. Sloan may testify as to his fifth opinion concerning the rear impact guard, so long as the testimony goes only to the performance of the rear impact guard in the accident. By examining the physical evidence, Mr. Sloan relied upon his past experiences with impact bars, his involvement in testing programs, and his experience inspecting welds as an accident reconstructionist. Thus, Defendant's contention that Mr. Sloan is not qualified is unpersuasive. Defendant is free to raise viable challenges

15

to Mr. Sloan's opinions at trial through cross-examination, as such challenges go to the weight, not admissibly of Mr. Sloan's opinion. Mr. Sloan is qualified based on his experience to examine the impact guard and explain any possible deficiencies in its performance during the collision.

As to Mr. Sloan's sixth opinion, however, the Court finds that it must be excluded. As the proponent of the expert testimony, Plaintiff must establish that the conclusion is sufficiently reliable and helpful to the trier of fact. See McCorvey, 298 F.3d at 1257. Here, the Court has issues with the offered expert opinion of Mr. Sloan that the Ford Explorer would have continued in the emergency lane but for LaPorte parked tractor-trailer. Plaintiff does not identify any sufficiently reliable principles or methods that he used to formulate this opinion. Mr. Sloan has simply presumed that Jaffe would have continued driving in the emergency lane without incident. It is far too speculative for Mr. Sloan to offer an opinion as he did on this point. Mr. Sloan is perfectly qualified to testify concerning the contours of the roadway where the incident occurred, but to offer testimony about how a motorist—albeit a motorist obliviously driving on the shoulder in the emergency lane—would have continued to

16

drive does not meet the necessary Daubert requirements. Indeed, it is quite the stretch to argue that a jury would need an expert witness to tell them that a car would have continued moving forward except for a parked vehicle that was directly in its path.

Therefore, Defendant's Motion to Exclude the expert testimony of Mr. Sloan is **DENIED** as to his first and second opinions. Defendant's motion as to Mr. Sloan's third, fourth, and fifth opinions is **GRANTED IN PART** and **DENIED IN PART**.   Mr. Sloan may testify concerning the standards of the FMCSR as they relate to inspection requirements and record-keeping protocol.   Mr. Sloan may only testify to what extent, if any, the lack of retroreflective tape had with respect to Jaffe's reaction time and avoidance of the tractor-trailer.   Mr. Sloan may also testify whether the rear impact guard was deficient in its performance during the accident.   Defendant's motion to exclude Mr. Sloan's sixth opinion is **GRANTED**.

B. James Scapellato

Defendant's expert James Scapellato has formulated six opinions concerning the regulatory duties owed by commercial truck drivers and the standard of care owed to third parties as a function of the trucking industry's customs and practices.   (Doc. 17, Ex. D; Doc 18, Ex. E.)

17

Plaintiff has filed a <u>Daubert</u> motion to exclude the first and second of his opinions on the grounds that it is based on unreliable evidence and not reached relying upon industry-specific practices and customs.  (Doc. 39 at 1.) Plaintiff specifically objects to the following opinion of Mr. Scapellato:

> Opinion #1: On April 3, 2009, Driver LaPorte was faced with a dangerous emergency vehicle situation that warranted him to stop his vehicle in the emergency lane of I-95 Southbound.  Driver LaPorte demonstrated reasonable and prudent care consistent with the intent and purposes of the FMCSRs and trucking industry customs and practices by safely stopping his vehicle in the emergency lane and ceasing interstate operation until the lighting problem was resolved to his satisfaction.

> Opinion #2: Driver LaPorte was not under any affirmative regulatory duty to place emergency warning devices out on the highway since he was not stopped in the emergency lane for 10 minutes or more.

(Doc. 17, Ex. D at 6-8.)

As to Mr. Scapellato's first and second opinions, the Court finds that Mr. Scapellato, a duly qualified expert, may offer his testimony.  Mr. Scapellato's opinions are in direct response to the opinion of Plaintiff's expert Mr. James Sloan regarding alleged exigency at the time of the collision and the appropriate use of an emergency lane. Mr. Scapellato is offering an opinion that is based on upon much of the same evidence as the other designated expert

witnesses for Plaintiff and Defendant. Conflicting expert witness testimony is not grounds to exclude—the identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination and does not render expert testimony inadmissible under Daubert. See Daubert, 509 U.S. at 596; Quiet Tech., 326 F.3d at 1345-46. Additionally, the Court finds Mr. Scapellato well qualified and experienced with matters involving the FMCSR which he noted numerous times when forming his opinions. Just as the Court will allow Mr. Sloan to offer testimony as to the propriety and legitimacy of LaPorte's stop, the offered testimony of Mr. Scapellato will also assist the trier of fact in determining facts at issue. Accordingly, Plaintiff's Motion to Exclude Mr. Scapellato's testimony is **DENIED**.

        C. Gary Corey, Jr.

    Defendant retained Gary Corey, Jr. as an accident reconstruction expert. (Doc. 23.) Plaintiff has moved to exclude Mr. Corey's first opinion on the ground that it is not supported by reliable evidence and Mr. Corey's second opinion because it does comply with accepted accident reconstruction principles. (Doc. 41 at 2-4.) Mr. Carey's opinions can be summarized as following: 1) LaPorte was reasonable by pulling into the emergency lane when he

noticed his lights flickering, thereby in compliance with applicable laws and regulations; and 2) that Jaffe, under the influence of alcohol, was improperly traveling southbound on Interstate 95 in the emergency lane for an unknown period of time. (Doc. 23 at 2-3.)

The Court concludes that Mr. Corey may testify as to both of his opinions. Mr. Corey relied upon accepted principles of accident reconstruction in analyzing the roadway evidence to reach his conclusions, which are consistent and based on evidence of investigating officer Captain Maxwell. Contrary to Plaintiff's assertions, Mr. Corey has not held himself out to be a toxicologist, and instead, offered expert analysis relying on the totality of the evidence available. Reliance on the officially certified Georgia Bureau of Investigation toxicology report is not grounds for exclusion because the Court finds this basis proper. Plaintiff is free to identify flawed data or facts relied upon by an expert upon cross-examination, but such reliance at this stage does not render expert testimony inadmissible under Daubert. See Daubert, 509 U.S. at 596; Quiet Tech., 326 F.3d at 1345-46. Accordingly, Plaintiff's motion to exclude Mr. Corey's testimony is **DENIED**.

D. Dr. Jeffrey Handler

Defendant has engaged Dr. Jeffrey Handler as an expert witness in toxicology. (Doc. 18.) Plaintiff objects to Dr. Handler's third opinion—that "[a]t the time of the accident, Scott Jaffe would be expected to have been significantly impaired with respect to muscle coordination, reaction time, and judgment." (Doc. 42 at 2.) Plaintiff alleges that Dr. Handler's opinion is "insufficiently sophisticated, highly speculative, and not sufficiently tied to the facts of this case." (Id.)

After reviewing Dr. Handler's report and deposition, the Court concludes that Dr. Handler's opinions were adequately sophisticated and sufficiently reliable to meet the reliability prong of Rule 702. The testimony of Dr. Handler, a toxicology expert, as to the possible symptoms and physiological effects of alcohol at the time of the accident is proper because the foundational evidence is sufficiently reliable. See Rink v. Cheminov, Inc., 400 F.3d 1286, 1294 (11th Cir. 2005). Dr. Handler relied upon the testing and calculations performed by the Georgia Bureau of Investigation's toxicology report as well as the Georgia Uniform Motor Vehicle report from the incident. (Doc. 18 at 4.) Both were official reports prepared and kept in the ordinary course of business and certified as

the same. (Doc. 44-1 at 65-69.) As the proponent of expert testimony, Plaintiff must establish that the conclusion is sufficiently reliable and helpful to the trier of fact. See McCorvey, 298 F.3d at 1257. The Court finds no reason to presume the invalidity or unreliability of the official, certified reports relied upon by Dr. Handler to formulate his opinion. Therefore, Dr. Handler's opinion on the physiological effect of alcohol is reliable, see Rink, 400 F.3d at 1294, and can be offered at trial. Again, Plaintiff is free to identify flawed data or facts relied upon by an expert upon cross-examination, but such reliance at this stage does not render expert testimony inadmissible under Daubert. See Daubert, 509 U.S. at 596; Quiet Tech., 326 F.3d at 1345-46. Accordingly, Plaintiff's Motion to Exclude Dr. Handler is **DENIED**.

II. MOTION TO STRIKE

Pursuant to Federal Rule of Civil Procedure 26, a party must disclose the identity of any expert witness it may use at trial "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Such a disclosure must be "accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(B).

Should a party fail to properly disclose an expert witness, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  It is the party failing to comply with Rule 26(a) that has the " 'burden of establishing that its non-disclosure was either substantially justified or harmless.' "  Caviness v. Holland, 2011 U.S. Dist. LEXIS 31328, at *8 (S.D. Ga. 2011) (unpublished) (quoting Hewitt v. Liberty Mut. Grp., Inc., 268 F.R.D. 681, 683 (M.D. Fla. 2010)).  "Substantial justification is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply."  Id. at 682 (citations omitted).

On July 22, 2010, this Court entered a scheduling order (Doc. 8) that provided discovery deadlines, including a September 12, 2010 deadline for Plaintiff to identify her experts and an October 12, 2010 deadline for Defendant. The parties then sought, and obtained this Court's approval for two extensions of the discovery period and motions deadlines.  (Doc. 21; Doc. 25.)  However, neither of these orders affected the expert witness deadline established in the original scheduling order.  (Doc. 21; Doc. 25)  Both

Plaintiff (Doc. 13) and Defendant (Doc. 17) filed timely expert witness disclosures. Defendant filed a supplemental expert report on October 28, 2010. (Doc. 18.) Numerous times throughout discovery, Defendant raised issues regarding the blood alcohol content of Jaffe and the possible sources of that information. (Doc. 70, Ex. A; Doc 14 at 5-6.) Over six months later, on April 8, 2011, Plaintiff relied on an affidavit from Dr. John Vasiliades in her reply brief to Defendant's Motion for Summary Judgment. (Doc. 63, Ex. H.) Dr. Vasiliades's expert opinions were to the accuracy of the Georgia Bureau of Investigations toxicology report and the report's conclusion that Jaffe was driving under the influence of alcohol. (Id. at 4-6.)

While it is true that Plaintiff must show that the late disclosure is "substantially justified" or "harmless," Plaintiff must first satisfy Federal Rule of Civil Procedure 16(b)'s "good cause" requirement because she provided Dr. Vasiliades's expert affidavit well after the court-ordered scheduling deadline. See Dracz v. Am. Gen. Life Ins. Co., 426 F. Supp. 2d 1373, 1376 (M.D. Ga. 2006) (applying Rule 16(b) "good cause" amendment standard where party failed to identify expert witness by court-ordered deadline). The Court has broad discretion to admit or

exclude untimely submissions under the Rule. Bearint v. Dorel Juvenile Grp., Inc., 389 F.3d 1339, 1348-49 (11th Cir. 2004). Furthermore, this Court has held that where a court's scheduling order is silent as to identification of rebuttal experts, Rule 26(a)(2)(D)(ii) will govern the disclosures. See A&J Mfg., LLC v. Kingsford Prods. Co., LLC, 2010 U.S. Dist. LEXIS 47401 (S.D. Ga. 2010) (unpublished).

Preliminarily, Plaintiff argues that Defendant's motion to strike is an improper use of a motion to strike under Federal Rule of Civil Procedure 12(f), and that Dr. Vasiliades's testimony is impeachment evidence and would not be either an unfair surprise or harmful to Defendant. (Doc. 77 at 7-8.) As to the first objection, this Court finds that the motion is proper and will be duly considered on the merits. Federal courts in Georgia have allowed motions to strike similarly untimely disclosures. See Caviness v. Holland, 2011 U.S. Dist. LEXIS 31328 (S.D. Ga. 2011) (unpublished); Purdee v. Pilot Travel Ctrs., LLC, 2009 U.S. Dist LEXIS 13628 (S.D. Ga. 2009) (unpublished); Morrison v. Exxon-Mobil Corp., 2006 U.S. Dist. LEXIS 63549 (M.D. Ga. 2006) (unpublished).

Plaintiff characterized Dr. Vasiliades's affidavit as impeachment evidence that is not subject to the disclosure

or timing requirements of Federal Rule of Civil Procedure 26. (Doc. 77 at 8.) Yet, a review of the record in this case and the affidavit of Dr. Vasiliades suggests otherwise. Plaintiff's opposition to the motion to strike suggests that Dr. Vasilidades's testimony "does not directly confront" the opinions of Defendant's expert Dr. Handler.

The Court, however, is not persuaded by Plaintiff's characterizations. During discovery, Defendant has made numerous disclosures involving toxicology reports, toxicology experts, and Jaffe intoxication. There is no good cause for Plaintiff's untimely delay—it was only after six months following the expert disclosure deadline did Plaintiff finally seek to introduce rebuttal evidence against Defendant's disclosed experts. Defendant was wholly unaware while preparing its Motion for Summary Judgment that Plaintiff would introduce a rebuttal expert in its response or challenge the validity of the GBI report. The delay was hardly harmless—had Defendant known of such a possible rebuttal expert witness, it may have altered bases or grounds upon which Defendant based its motion.

The Court is satisfied that Dr. Vasiliades is, in fact, a rebuttal witness. Plaintiff avers as much in her

brief opposing the motion claiming that Dr. Vasiliades's affidavit "attacks the credibility of the toxicology report itself" thereby impeaching "both the [GBI toxicology report] and Dr. Handler." (Doc. 77 at 1.) Even assuming that Plaintiff's characterization as an impeachment witness is accurate, Dr. Vasiliades exceeded the scope of any possible impeachment grounds. Simply, Dr. Vasiliades's testimony is provided to directly rebut the GBI toxicology report and the conclusions reached by Dr. Handler. Federal Rule of Civil Procedure 26(a)(2)(D)(ii) requires that a party must disclose an expert within thirty days after the other party's disclosure "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party." Because Plaintiff did not disclose within 30 days of either the GBI toxicology report evidence or Dr. Handler's expert toxicology report, the disclosure of Dr. Vasiliades is untimely and Defendant's motion is **GRANTED**.[7] The Court will not,

---

[7] Even assuming that Dr. Vasiliades is not a rebuttal expert, he must then qualify as a principal expert witness in toxicology. Plaintiff may offer lay impeachment evidence at trial regarding Jaffe's intoxicated state by witness who interacted with him. However, Dr. Vasiliades is expert impeachment evidence offered well past the deadlines for properly disclosing expert evidence.

however, impose any sanction pursuant to Federal Rule of Civil Procedure 37(c)(1) as suggested by Defendant.

III. MOTION FOR SUMMARY JUDGMENT

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323.   The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case.   Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant.   Matsushita, 475 U.S. at 587-88.   However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."   Id. at 586.   A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice.   See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998).   Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment."   Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

A.   Negligence and Negligence Per Se[8]

"In a diversity jurisdiction case, the court applies the substantive law of the state in which the case arose." Azar v. Nat'l City Bank, 382 F. App'x 880, 884 (11th Cir. 2010).   Because this case is based on diversity jurisdiction, the Court will look to the laws of Georgia for guidance.   To state a cause of action for negligence in Georgia, a plaintiff must show

> (1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage to plaintiffs' legally protected interest resulting from the breach.

Shortnacy v. N. Atlanta Internal Med., P.C., 252 Ga. App. 321, 325, 556 S.E.2d 209, 213 (2001).

Under Georgia law, the issue of negligence in automobile accident cases is ordinarily for the jury.   See Herringdine v. Barger, 405 F.2d 183 (5th Cir. 1968); Gee v. Owens, 384 F.2d 704 (5th Cir. 1967) (finding that the question of negligence in connection with conduct of

---

[8]   It is undisputed between the parties that LaPorte is Defendant's employee and the doctrine of respondeat superior applies.

automobile drivers rarely can be decided as matter of law).[9]

Further, negligence is a question of fact where there is a

conflict in the evidence.    Davis v. Atlanta Coca Cola

Bottling Co., 119 Ga. App. 422, 167 S.E.2d 231 (1969).

Because "collision cases are particularly well suited for

jury determination," liability should be determined by a

jury "except in those rare circumstances when a party

admits liability or the facts are undisputed."  Beckett v.

Monroe, 249 Ga. App. 615, 616, 548 S.E.2d 131, 134 (2001).

Georgia law requires the exercise of ordinary care.

Shortnacy, 252 Ga. App. at 213.  Relating to automobiles,

> [j]ust how close to a vehicle in the lead a
> following vehicle ought, in the exercise of
> ordinary care, be driven, just what precautions a
> driver of such a vehicle in the exercise of
> ordinary care take to avoid colliding with a
> leading vehicle which slows, stops, or swerves in
> front of him, just what signals or warnings the
> driver of a leading vehicle must, in the exercise
> of due care, give before stopping or slowing up
> or his intention to do so, may not be laid down
> in any hard and fast or general rule.

Atlanta Coca-Cola Bottling Co. v. Jones, 236 Ga. 448, 450-

51, 224 S.E.2d 25, 25 (1976).  In each case, except when

reasonable minds may not differ, what due care required and

whether it was exercised is for the jury. Cardell v. Tenn.

---

[9] In Bonner v. City of Prichard, 661 F.2d 1206, 109 (11th
Cir. 1981) (en banc) the Eleventh Circuit adopted as
binding precedent all decisions of the former Fifth Circuit
handed down prior to October 1, 1981.

Electric Power Co., 79 F.2d 934, 937 (5th Cir. 1935). And
because there are no hard and fast rules to determine
ordinary care, "[o]ne of the best known rules in automobile
tort law is that negligence, the solution of what
negligence, whose negligence, etc., has caused a collision
is left solely to the jury, except in plain and palpable
cases." Alexander v. Kendrick, 134 Ga. App. 249, 251, 213
S.E.2d 911, 913 (1975) (citing Hanchey v. Hart, 120 Ga.
App. 677, 680, 171 S.E.2d 918 (1969); Wakefield v. A. R.
Winter Co., 121 Ga. App. 259, 174 S.E.2d 178 (1970)).

The cardinal rule of summary judgment procedure is
that the court can neither resolve facts nor reconcile the
issues, but can only determine if there is an issue.
Fowler v. Smith, 237 Ga. App. 841, 843, 516 S.E.2d, 845,
848 (1999). A commercial vehicle driver's failure to act
in conformity with a regulatory command is generally
negligence per se. Wallace v. Ener, 521 F.2d 215, 224 (5th
Cir. 1975). However, proximate cause must still be
established, which typically falls within the province of
the jury. See Miller v. Dean, 113 Ga. App. 869, 870, 140
S.E.2d 191, 192 (1966).

Plaintiff's complaint includes counts that Defendant
was negligent per se in violating numerous federal safety
regulations. Specifically, Plaintiff asserts that
Defendant violated 49 C.F.R. §§ 396.3, 392.7, 392.22,

32

393.9(a), 393.28, 393.86, 571.108, 571.223. (Doc. 76 ¶ 31.) Plaintiff also alleges that LaPorte and Defendant failed to exercise due care by exiting the highway and by stopping the vehicle on the side of the highway, improperly used an emergency lane, and failed to meet the reflective tape conspicuity requirements for trailers manufactured after 1993. (Id.) Therefore, this Court is left with the task of determining whether there are any issues as to any of Plaintiff's negligence and negligence per se claims.[10]

### i.  Negligence

Plaintiff contends LaPorte was negligent for failing to exercise due care when he did not take an earlier exit, did not permanently or properly repair the lighting issue, and improperly parked his vehicle in the emergency lane. Defendant has moved for summary judgment alleging that the intervening negligent and criminal acts of Jaffe warrant summary judgment.

The case presently is neither a plain nor palpable one fit to decide as a matter of law. See Alexander, 134 Ga.

---

[10] It is not the role of the Court to weigh the evidence or decide the issues of fact on a motion for summary judgment. In fact, although a jury might ultimately find for Defendant—despite all the evidence being construed by the Court more favorably toward Plaintiff in this summary judgment motion—the evidence does not require the Court to rule for Defendant. See Hillary v. Burrell, 237 Ga. App. 792, 793, 516 S.E.2d 836, 837 (1999); see also Barber v. Atlas Concrete Pools, 155 Ga. App. 118, 119, 270 S.E.2d 471, 473 (1980) (trial court is not authorized to weigh the evidence or to decide issues of fact when they exist).

App. at 251, 213 S.E.2d at 913.   Because the Court must consider the evidence in favor of Plaintiff, there remain a number of contested issues that go to Defendant's possible negligence and requisite due care.   Most importantly, there exist disputed material facts that raise issues about Jaffe's possible negligence in this action as well as conflicting explanations for LaPorte's use of the emergency lane.   Plaintiff admits as much in her complaint when she stated that "Jaffe drove the Ford Explorer off the roadway, into the emergency lane, and collided with the rear end of the trailer."   (Doc. 76 ¶ 22.)   A number of additional factors surrounding Jaffe and the Ford Explorer remain disputed and appropriate for a jury decision—critically, whether and to what extent Jaffe's possible intoxication contributed to the accident and whether it was reasonable and prudent for LaPorte to park in the emergency lane.

     ii.   49 C.F.R. § 396.3

     Plaintiff contends that Defendant was negligent per se by failing to properly inspect and repair the trailer at issue.   49 C.F.R. § 396.3 provides, in part, that every motor carrier must "systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained" a commercial vehicle.   Defendant argues that the evidence shows it inspected and maintained its trailer.   However, there remain disputed issues as to whether the trailer was properly inspected, repaired, and

maintained as to a number of issues, including the conspicuity tape and the rear impact bar. Accordingly, the Court finds that Defendant is not entitled to summary judgment based on 49 C.F.R. § 396.3.

### iii. 49 C.F.R. § 392.7

In her complaint, Plaintiff also alleges that Defendant was negligent per se for failing to confirm that the lighting devices and reflectors were in proper working order before driving the trailer, in violation of 49 C.F.R. § 392.7. Defendant avers that the testimony of LaPorte and expert witness James Scapellato are sufficient to show that LaPorte performed an adequate inspection. However, taking the facts in the light most favorable to Plaintiff, there remain factual issues as to whether any inspection that was done by Defendant was adequate. Thus, the claim based on 49 C.F.R. § 392.7 must remain.

### iv. 49 C.F.R. § 392.22

Plaintiff alleges that Defendant was negligent per se in failing to place warning devices behind the tractor-trailer after pulling over in the emergency lane.[11] The relevant regulation provides that the driver shall, upon stopping, "immediately activate the vehicular hazard warning signal flashers and continue the flashing until the driver places the warning devices." 49 C.F.R. § 392.22(a).

---

[11] Because the Court has recognized Plaintiff's withdrawal of her negligence per se predicated upon a failure to comply with 49 C.F.R. §§ 392.22(a), 393.95, and 571.125, the Court need not further consider them.

Whenever a vehicle is stopped upon the shoulder of a highway for any cause except necessary traffic stops, "the driver shall, as soon as possible, but in any event within 10 minutes, place the warning devices required by § 393.95." 49 C.F.R.§ 392.22(b).

It is undisputed that LaPorte was stopped in the emergency lane for less than ten minutes. (Doc. 17, Ex. 4.) Plaintiff and Defendant have both retained experts who have offered conflicting testimony as to the propriety of LaPorte stopping in the emergency lane. Defendant relies on the expert opinion of Mr. Scapellato, whom was previously employed by the Federal Highway Administration as well as a Georgia case, Reid v. Midwest Transp., 270 Ga. App. 557, 607 S.E.2d 170 (2004), to suggest that LaPorte's three minute stop was permissible because he was stopped for less than ten minutes. (Doc. 17, Ex. 4 at 7-8.) Plaintiff's cite to the expert opinion of Mr. Sloan and Wallace v. Ener, 521 F.2d at 221.

Neither party disputes that this regulation applies to the circumstances of this case. See Florea v. Werner Enters., Inc., 2009 WL 2421853 at *7 (D. Mont. 2009) (allowing the jury to decide whether driver complied with responsibility to deploy devices as soon as possible). A plain reading of the statute suggests that the warning devices must be placed as soon as possible. There are a myriad of reasons that would prevent placing the hazard

devices immediately, such as exigency, safety, or rescue, but the regulation requires that, under no circumstances, should more than ten minutes elapse before doing so.  Thus, to this Court, the duties under the regulation are two-fold: in as little time as possible, set up the hazard devices, but in absolutely no circumstance take more than ten minutes.  Cf. Shaw v. Stewart's Transfer, 2010 WL 2943202 at *3 (D. Me. 2010) (unpublished); Merzigian v. Sunbury Trans., Ltd., 523 F. Supp. 2d 116, 120 (W.D. La. 2006) (unpublished).  The extent to which it was or was not possible for LaPorte to place the required warning devices prior to the incident is a factual question for the jury.[12]

> v.   49 C.F.R. § 393.9(a)

Plaintiff has also claimed Defendant was negligent per se by failing to maintain operable lamps as required by 49 C.F.R. § 393.9(a).  Defendant counters by claiming that the lights were capable of operation at all times, citing Mr. Scapellato's expert opinion.  Because there exist genuine issues as to whether and when LaPorte knew of the light

---

[12] Defendant rely on Reid to justify LaPorte's failure to place the hazard devices as soon as possible because the stop was under ten minutes.  Reid affirmed summary judgment in favor of a truck driver who parked his tractor-trailer in an emergency lane without hazard devices to help rescue injured people in an accident.  Reid, 270 Ga. App. at 562, 607 S.E.2d at 175.  Unlike in Reid, where there was an exigent circumstance —an automobile collision—with injured motorists, it is appropriate in this case to allow a jury to decide as a factual matter whether LaPorte had an opportunity to place the hazard devices.

problem, whether LaPorte was even told or understood of the problem when he switched trailers with the driver in Hardeeville, South Carolina, and whether any action or inaction he undertook was reasonable, Defendant is not entitled to summary judgment.

### vi.   49 C.F.R. § 393.28

In her complaint, Plaintiff alleges that Defendant was negligent per se by failing to properly install and maintain a wiring system that meets or exceeds the standards provided in 49 C.F.R. § 393.28. Defendant argues for summary judgment because there has been no testimony or allegations regarding the wiring systems and standards. After review of the record, the Court agrees. Plaintiff has not provided any factual allegations or evidence sufficient to create a genuine issue of material fact. Accordingly, Defendant is entitled to summary judgment on Plaintiff's negligence per se claim based on 49 C.F.R. § 393.28.

### vii. 49 C.F.R. §§ 393.86, 571.223

Plaintiff's complaint also claims that Defendant was negligent per se by failing to properly install and maintain a rear impact guard, in violation of 49 C.F.R. §§ 393.86, 571.223.   49 C.F.R. § 393.86(a) specifically restricts the application of the provisions to "trailers and semitrailers manufactured on or after January 26, 1998." It is undisputed that Defendant's trailer was

manufactured in 1996, thereby precluding any application to the trailer at issue in this case. Therefore, such a claim does not present a genuine issue.

To those trailers manufactured before 1998, the original rule required only that the guard be "substantially constructed and attached by means of bolts, welding, or other comparable means." 49 C.F.R. § 393.86(b). Additionally, there is no requirement that vehicles manufactured prior to January 26, 1998 be retrofitted with newly complying rear impact guards. 49 C.F.R. § 393.86(a). As previously discussed, the parties' experts may offer testimony as to the proper functioning of the rear impact guard. However, the prior regulations are aimed only at the attachment and construction of the rear impact guard. It is undisputed that there was a rear impact guard and that it was attached. Plaintiff's contention is one of performance, not of its construction or attachment. Thus, Defendant's motion for summary judgment is granted on these grounds.

viii. 49 C.F.R. § 571.108

Plaintiff avers that Defendant was negligent per se by failing to install and maintain lamps, reflective devices, and associated equipment. Defendant claims that the regulation is part of the National Highway Traffic Safety Administration's (NHTSA) Federal Motor Vehicle Safety Standards and Regulations for manufacturers and does not

39

apply to motor carriers.  (Doc. 44 at 25.)  After a review of the record in this case, Plaintiff has not provided any factual allegations or evidence sufficient to create any triable issues.  Therefore, Defendant is entitled to summary judgment on Plaintiff's negligence per se claim under 49 C.F.R. § 571.108.  While the jury may eventually decide this case in favor of Defendant—after they weigh the evidence, determine possible liability, proximate cause, and apportion any comparative fault—at this time, Plaintiff has done enough to preclude summary judgment on the aforementioned negligence and negligence per se issues.

    B.   <u>Strict liability</u>

Plaintiff also alleges that Defendant's stopping and parking of a tractor trailer truck on a public roadway constitutes strict liability.  (Doc. 76 ¶¶ 48-55.)  Georgia courts have found that "inherently dangerous work includes the use of propane gas, blasting operations, fumigation of premises, spraying from airplanes, the escape of a dangerous animal, emitting sparks from a railway engine and raising an embankment that is unguarded."  <u>Ogles v. E.A. Mann & Co.</u>, 277 Ga. App. 22, 25, 625 S.E.2d 425, 429 (2005).  Courts applying Georgia law have relied upon the Restatement (Second) of Torts § 520 to provide guidance on whether an activity is abnormally dangerous.  <u>Gullock v. Spectrum Scis. & Software, Inc.</u>, 146 F. Supp. 2d 1364, 1375 (M.D. Ga. 2001).  Under the Restatement, to determine

whether an activity is abnormally dangerous for purposes of strict liability, a court must consider

> (1) existence of a high degree of risk of some harm to the person, land or chattels of others, (2) likelihood that the harm that results from it will be great, (3) inability to eliminate the risk by the exercise of reasonable care, (4) extent to which the activity is not a matter of common usage, (5) inappropriateness of the activity to the place where it is carried on, and (6) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520.

Even after taking all inferences in the light most favorable to nonmovant Plaintiff, the Court is not persuaded by Plaintiff's strict liability cause of action. The Court cannot find any analogous Georgia cases, and Plaintiff has not provided any, involving automobile accidents applying strict liability principles where there was alleged abnormally or inherently dangerous activity. The facts before this Court are hardly analogous to Fowler v. Smith, where the actions were considered inherently dangerous because the driver stopped his unlit tractor-trailer in the center lane of an interstate highway for 35 minutes. 237 Ga. App. 841, 843, 516 S.E.2d, 845, 848 (1999). On the other hand, in Highsmith v. Tractor Trailer Serv., the court found that a defendant was not subject to strict liability where five feet of the trailer encroached on the travel lanes. 2005 U.S. Dist. LEXIS 46153 at *33 (N.D. Ga. 2005) (unpublished). Here, it is undisputed that

LaPorte's trailer was wholly within the emergency lane. Simply put, while possibly negligent and potentially even grossly negligent, parking a vehicle completely into the emergency lane, with activated flashers and retroreflective tape over a portion of the tractor's rear, hardly rises to the level of an inherently dangerous activity, no matter what the justification for LaPorte's stop may be.  Because Plaintiff failed to meet her burden of proof on this claim showing an inherently dangerous activity, Defendant's Motion for Summary Judgment as to plaintiff's strict liability claim is **GRANTED**.

    C.   Punitive damages

    Georgia law states that "[p]unitive damages may be awarded only in tort actions in which it is proven by clear and convincing evidence that the defendnat's conduct showed willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A. § 51-12-5.1(a).  Acts or omissions constituting mere negligence or gross negligence will not support an award of punitive damages.  Roberts v. Forte Hotels, 227 Ga. App. 471, 472, 489 S.E.2d 540, 542 (1997) (citing Walker v. Sturbridge Partners, Ltd., 221 Ga. App. 36, 40, 470 S.E.2d 738, 743 (1997)); see also, Fowler, 237 Ga. App. at 843, 516 S.E.2d at 848.  In automobile collision cases that are " 'decided under OCGA § 51-12-5.1, punitive damages are not

recoverable where the driver at fault simply violated a rule of the road.' " Fowler, 237 Ga. App. at 843, 516 S.E.2d at 848 (quoting Carter v. Spells, 229 Ga. App. 441, 442, 494 S.E.2d 279, 282 (1997)).

Punitive damages may be awarded only when the collision resulted from a pattern or policy of dangerous driving, such as multiple DUIs or excessive speeding. O.C.G.A. § 51-12-5.1; Carter, 229 Ga. App. at 442, 494 S.E.2d at 282. The plaintiff must prove such a policy or practice of defendant by clear and convincing evidence. Id. Evidence relevant to an award of punitive damages relates to the proximate cause of the collision. Brooks v. Gray, 262 Ga. App. 232, 233, 585 S.E.2d 188-89 (2003).

Here, a review of the record reflects that there is no evidence Defendant caused the accident through a pattern or policy of dangerous driving or that any aggravating acts were made with a conscious indifference to the consequences. See Miller v. Crumbley, 249 Ga. App. 403, 405, 548 S.E.2d 657, 658 (2001). Plaintiff improperly relies upon the litany of alleged FMCSR violations to support an award of punitive damages rather than the proximate cause of the accident. (Doc. 63 at 20-21); see Brooks, 262 Ga. App. at 233, 585 S.E.2d at 188-89. Regardless of the purpose for LaPorte's stop in the emergency lane, Georgia case law is clear that punitive damages are inappropriate for the case at hand. There was

no malicious, wantonness, or entire want of care by LaPorte or Defendant in any pattern or policy related to the collision. See Carter, 229 Ga. App. at 442, 494 S.E.2d at 280. Accordingly, Plaintiff has failed to demonstrate that the collision proximately resulted from Defendant's pattern or policy of dangerous driving so that Defendant's Motion for Summary Judgment as to punitive damages is **GRANTED**.

CONCLUSION

For the foregoing reasons, Defendant's request to exclude the expert testimony of Mr. Sloan (Doc. 43) is **DENIED** as to his first and second opinions. Defendant's request as to Mr. Sloan's third, fourth, and fifth opinions is **GRANTED IN PART** and **DENIED IN PART**. Mr. Sloan may testify concerning the standards of the Federal Motor Carrier Safety Regulations ("FMCSR"), found at 49 C.F.R. §§ 300-399, as they relate to inspection and record-keeping protocol. Mr. Sloan may only testify to what extent, if any, the lack of retroreflective tape had on Jaffe's reaction time and avoidance of the tractor-trailer. Mr. Sloan may also testify whether the rear impact guard was deficient in its performance during the accident. Defendant's Motion to Exclude Mr. Sloan's sixth opinion is **GRANTED**. Plaintiff's request to exclude Mr. Scapellato's testimony (Doc. 39) is **DENIED**. Plaintiff's Motion to Exclude Mr. Corey's testimony (Doc. 41) is

**DENIED**.    Plaintiff's   Motion   to   Exclude   Dr.   Handler's
testimony   (Doc.   42)   is   **DENIED**.      Finally,   Plaintiff's
Defendant's Motion to Strike (Doc. 70) is **GRANTED**.

Defendant's Motion for Summary judgment (Doc. 44) is
**GRANTED IN PART** and **DENIED IN PART**.   Defendant's request
for summary judgment as to Plaintiff's claims of negligence
and negligence per se is **DENIED**, with the exception of
Plaintiff's   negligence   per   se   claims   under   49   C.F.R.
§§ 393.28, 393.86, 571.223, and 571.108, which is **GRANTED**.
Defendant's request for summary judgment as to Plaintiff's
claims of strict liability and punitive damages is **GRANTED**.

SO ORDERED this _26ᵗʰ_ day of March 2012.


WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA